UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CELESTE S.,[1]

      **Plaintiff,**

  v.

      Case No. 3:20-cv-0299
      Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Celeste S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. ("DIB" benefits"). Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 4, on *Plaintiff's Statement of Errors*, ECF No. 10, *Defendant's Memorandum in Opposition*, ECF No. 13, *Plaintiff's Reply*, ECF No. 14, and the *Certified Administrative Record*, ECF No. 8. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.   PROCEDURAL HISTORY

On March 14, 2016, Plaintiff protectively filed an application for DIB benefits, alleging that she has been disabled since December 31, 2015. R. 223-29.[3] The application was denied initially and upon reconsideration, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 120-21. Administrative Law Judge ("ALJ") Stuart Adkins held a hearing on January 29, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 34-73. In a decision dated July 29, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 31, 2015, Plaintiff's alleged disability onset date, through the date of that decision. R. 15-25. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 21, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

II.   LEGAL STANDARD

A.   Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

---

[3] The Court will refer to pages in the Certified Administrative Record as "R. __," using the pagination as it appears in the Certified Administrative Record.

evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §

404.1520(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in

the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 60 years old on December 31, 2015, her alleged disability onset date. *See* R. 17. She met the insured status requirements of the Social Security Act through December 31, 2021. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine, chronic obstructive pulmonary disease/asthma, obstructive sleep apnea, right side radial tunnel syndrome, right side carpal tunnel syndrome, bilateral cubital tunnel syndrome, and complex regional pain syndrome/reflux sympathetic dystrophy. *Id*. The ALJ also found that Plaintiff's fibromyalgia, obesity, and Meniere's disease were not severe impairments. R. 19.[4]

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> (1) permitted to alternate between sitting and standing every 30-minutes while at the workstation; (2) frequently push/pull with the right upper extremity; (3) never climb ladders, ropes or scaffolds; (4) occasionally climb ramps and stairs, and crawl; (5) frequently stoop, kneel and crouch; (6) frequently finger, handle, and feel with the right upper extremity; (7) occasionally reach overhead with the right

---

[4] The ALJ also stated, inconsistently, that Meniere's disease was both a severe impairment, R. 18, and a non-severe impairment, R. 19. Neither party addresses this inconsistency, which appears to be immaterial.

> upper extremity; (8) avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants; and (9) avoid unprotected heights, dangerous machinery, and commercial driving.

R. 20. The ALJ also relied on the testimony of the vocational expert to find that this RFC permitted the performance of Plaintiff's past relevant work as a printing plant manager, as that job is generally performed. R. 24.

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from December 31, 2015, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four, arguing that the ALJ erred in evaluating the objective medical data and Plaintiff's symptoms. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 10; *Plaintiff's Reply*, ECF No. 14. The Acting Commissioner takes the position that her decision should be affirmed because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Memorandum in Opposition,* ECF No. 13.

IV.     **RELEVANT EVIDENCE**

Plaintiff is an Air Force veteran, R. 45, and worked for almost 30 years as a plant manager for the Department of Defense. R. 40, 42. Her job required her to lift up to 50 pounds, R. 45, but was "probably 90 percent sedentary." R. 46. She testified that she suffers from chronic regional pain syndrome which limits her activity to "a couple of minutes" before fatigue, burning and stinging set in. R. 49. She also experiences shortness of breath, asthma, and COPD, which causes hoarseness in her voice and which was aggravated by irritants in the air at work. R. 50.

She lives with her spouse in a two story house but, because of shortness of breath, she cannot carry all that she needs to carry up and down steps and must rest between trips. R. 43, 50. She also has chronic pain in her neck and lower back, which limits her ability to sit or stand for more than 30 to 40 minutes. R. 50-51. She can lift a gallon of milk. R. 52. If her pain is severe, she sometimes becomes nauseous and vomits. R. 63. She undergoes injection treatment for aggravation of her back and neck pain, "which helps within a day or two." R. 53. She takes medication for various conditions, including for her heart, but they cause fatigue. R. 54. She has difficulty sustaining focus on tasks. R. 63. She has undergone two surgeries on her arms, but "[she's] not a whole lot better," so she will not pursue further surgery. R. 55.

Although Plaintiff has undergone substantial medical treatment, the record does not contain an opinion by a medical provider regarding her ability to engage in work-related activities. In November 2016, Michael F. Bosworth, D.O., consultatively examined Plaintiff at the request of the state agency. R. 559-73. Dr. Bosworth noted a normal, steady gait and no use of a handheld assistive device; Plaintiff was stable at station and comfortable in the supine and sitting positions. R. 560. Cervical extension was 50% of normal and flexion of the dorsolumbar spine was slightly decreased, but all other ranges of motion were normal, R. 564-65. Lung fields were clear to percussion and auscultation, without wheezes, rales, or rhonchi; Plaintiff was not noted to be short of breath with exertion. R. 560-61. Grip strength was "slightly decreased" at 37 pounds, or 5/5, bilaterally. R. 561. Straight leg raising was normal in both the sitting and supine positions. *Id*. Muscle strength was normal at 5/5 bilaterally in the upper and lower extremities, R. 562, although Dr. Bosworth noted discoloration of the right hand and decreased strength in the right hand and fingers, R. 566. There was no evidence of atrophy and sensory modalities were well preserved. *Id*. Plaintiff could walk on her heels and toes, and could perform tandem gait and

squat without difficulty. *Id.* A pulmonary function study was normal. R. 572. Dr. Bosworth diagnosed chronic regional pain syndrome, history of back and neck pain with bulging discs following a 2014 motor vehicle accident, and COPD. *Id.* The doctor opined: "The claimant's ability to perform work-related activities such as bending, stooping, lifting, walking, crawling, squatting, carrying and traveling, as well as pushing and pulling heavy objects appears to have at least minimal impairment due to the objective findings…." *Id*.

Later that same month, Michael Delphia, M.D., reviewed the record for the state agency and concluded that Plaintiff's documented conditions and associated pain and weakness would permit her to lift and carry up to 20 pounds occasionally and 10 pounds frequently. R. 81-82. Plaintiff could stand and/or walk about 6 hours and sit about 6 hours in an 8-hour workday. R. 82. Pushing and pulling of the right upper extremity would be limited to frequently. *Id*. She could occasionally climb ramps and stairs, could never climb ladder, ropes, or scaffolds, and could frequently balance, stoop, kneel, crouch, and crawl. *Id*. Handling and fingering with her right upper extremity would be limited to frequent, and overhead reaching on the right was limited to occasional. R. 83. There was a slightly decreased grip strength in the right hand. *Id*. Plaintiff should avoid concentrated exposure to hazards.

In February 2017, Linda Hall, M.D., reviewed the record on reconsideration and agreed with Dr. Delphia's opinions, except that Dr. Hall opined that Plaintiff should avoid all exposure to hazards and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 97-100.

An October 2017 MRI of the lumbar spine was read as evidencing "new disc protrusions at the L4-5 and L5-S1 level," and "mild disc degeneration at L4-5," but no spinal canal stenosis or foraminal narrowing. R. 1187-88. *See also* R. 1506.

In April 2018, Leonard Comess, M.D., reviewed the record[5] and affirmed Dr. Hall's February 2017 RFC for light work with a limited ability in the right upper extremity for pushing, pulling, reaching, handling, and fingering. R. 585.

A CT of the lumbar spine administered in August 2018 revealed "[m]ild disc height loss" at L4-5, but no significant central canal or foraminal stenosis, as well as "[m]ild posterior disc height loss" at L5-S1, and "[m]ild bilateral foraminal stenosis." R. 1217.

In December 2018, C. Douglas Porter, M.D. saw Plaintiff for evaluation of complaints of bilateral arm and leg numbness and tingling with spinal pain. R. 1728-31. On examination, Plaintiff had tenderness to palpation in multiple areas of soft tissue in the upper and lower arms and lower back. R. 1728. Active rotation of the cervical spine was free and full, as was the lumbar lordosis. *Id*. Straight leg raising was negative. *Id*. Perception to light touch was mildly distorted in both hands. *Id*. An EMG administered at that time was read as "abnormal," R. 1730, although the abnormalities and changes were characterized as "quite mild," "quite negligible," and "minimal." R. 1730.

V.  DISCUSSION

   A.  Evaluation of the Medical Evidence

Plaintiff contends, first, that the ALJ erred in evaluating the objective medical data. In his decision, the ALJ accorded "great weight" to the opinions of Dr. Bosworth, the consultative examiner:

> Dr. Bosworth is the only physician to examine the claimant and offer an opinion regarding her physical functioning. Dr. Bosworth based his opinion on his examination of the claimant, review of the record, and objective testing. Dr. Bosworth's opinion is consistent with the record, which reveals mild [degenerative disc disease], with normal range of motion, negative straight leg

---

[5] It does not appear that the records relating to the October 2017 MRI of Plaintiff's lumbar spine, R. 1187-88, 1506, were included in the record at the time of Dr. Comess' review.

9

> raises, and normal upper and lower extremity strength. The opinion is also consistent with a finding of only mild decreases in diffuse lung capacity.

R. 21 (citations to record omitted). The ALJ also assigned "great weight" to the opinions of Drs. Delphia, Hall, and Comess, the reviewing physicians, finding that their opinions were based on their reviews of the record and their program knowledge, and were consistent with the record. R. 21-22.

Plaintiff argues that the ALJ erred in crediting the opinions of the reviewing physicians because those doctors had not reviewed evidence that was entered into the record after they had rendered their opinions, and the ALJ is not qualified to interpret the raw medical data in functional terms. *Plaintiff's Statement of Errors*, ECF No. 10, at PageID# 1780. This Court disagrees.

It must be noted, first, that an ALJ is required to consider the opinions of state agency medical and psychological consultants "because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). *See also* SSR 96-6p (State agency reviewers are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").

Where, as here, additional evidence is added to the record after the agency physician has conducted his or her review, an ALJ may still rely on that physician's opinion so long as it is clear that the ALJ has evaluated the later-received evidence. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009); *Mausser v. Saul*, 504 F.Supp. 3d 722, 725 (N.D. Ohio 2020). In the case presently before the Court, the ALJ unquestionably considered the August 2018 CT scan of Plaintiff's lumbar spine, R. 19 (referring to Exhibit "27F/10"), and to the December 2018 EMG, R. 18 (referring to Exhibit "38F/3"), which were not before the reviewing physicians.

Plaintiff complains, however, that the ALJ also erred by "interpret[ing] the raw medical data." *Plaintiff's Statement of Errors*, ECF No. 10, at PageID# 1780. This Court disagrees. As the ALJ noted, the medical experts who administered those tests referred to the results of the tests as "mild," "negligible," or "minimal."

It is not clear that the ALJ considered the results of the October 2017 MRI of the lumbar spine, which showed "new disc protrusions at the L4-5 and L5-S1 level," and "mild disc degeneration at L4-5," but no spinal canal stenosis or foraminal narrowing. R. 1187-88.[6] However, the later-administered CT scan of the lumbar spine, which revealed only "[m]ild disc height loss" at L4-5, and no significant central canal or foraminal stenosis, as well as "[m]ild posterior disc height loss" at L5-S1, and "[m]ild bilateral foraminal stenosis," R. 1217, was expressly considered by the ALJ. R. 19. Under these circumstances, the Court concludes that any failure on the part of the ALJ to expressly consider the results of the October 2017 MRI amounted to, at most, harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

      B.      Evaluation of Plaintiff's Subjective Symptoms and Complaints

Plaintiff also contends that the ALJ erred in his evaluation of Plaintiff's subjective symptoms and complaints. This Court disagrees. Subjective allegations of pain or other symptoms, unsupported by objective medical evidence, cannot alone establish a disability. 20 C.F.R. § 404.1529(a). In evaluating a claimant's subjective complaints, an ALJ must follow a

---

[6] The results of the October 2017 MRI are reflected in Exhibit 26, which the ALJ expressly referenced. R. 19 (referring to "26F/18, 33, 76"). However, the ALJ made no express reference to the MRI, which is reflected at pages 74-75 of that exhibit.

11

two-step process. SSR 16-3p, 2016 WL 1119029 (March 16, 2016).[7] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.* In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, although an ALJ's evaluation in this regard must be supported by substantial evidence, the ALJ has wide discretion to weigh the claimant's subjective complaints and may discount those complaints where they are not supported by other relevant objective evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)(citing *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

---

[7] SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. SSR 16-3p clarifies that the ALJ should not make statements about an individual's truthfulness but should determine whether the claimant's subjective complaints are consistent with other evidence in the record.

In the case presently before the Court, the ALJ properly recognized the governing standards, R. 22-23, and concluded:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported. As noted above, the claimant's testimony was not entirely consistent with the medical file.

R. 23. A fair reading of the ALJ's decision makes clear that, in reaching this conclusion, the ALJ considered Plaintiff's subjective complaints and activities of daily living, R. 17, treatments that "provide the claimant with 80% pain relief, and last for several months," R. 18 (citing R. 1679, a June 2017 office treatment note), and relatively minimal findings on examination and testing. R. 18-19. In short, the ALJ's finding that "[t]he evidence of record generally does not support [Plaintiff's] alleged loss of functioning," R. 24, enjoys substantial support in the record. Under these circumstances, this Court is without authority to disturb that finding.

## VI.  CONCLUSION

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 10, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  August 2, 2022               *s/Norah McCann King*
                                     NORAH McCANN KING
                                UNITED STATES MAGISTRATE JUDGE